BROWDER v INTERNATIONAL FIDELITY INSURANCE
COMPANY

Docket No. 65520. Argued November 10, 1981 (Calendar No. 7).—
Decided June 28, 1982.

Willodean Browder brought an action under the dramshop act
against James Stein, the owner of the Grapevine Lounge, and
his unidentified employee for damages resulting from injuries
she suffered while she was a patron of the lounge where she
was shot by the intoxicated employee. The employee was never
apprehended. An amendment to the complaint adding the
International Fidelity Insurance Company as a defendant was
filed more than two years after the shooting. A default judg-
ment entered against Stein was not satisfied because of Stein's
bankruptcy. Fidelity moved for accelerated judgment on the
ground that the plaintiff's claim against it was barred by the
two-year period of limitation provided by the dramshop act.
The Wayne Circuit Court, Patrick J. Duggan, J., granted the
motion. The Court of Appeals, Bashara, P.J., and D. F. Walsh
and T. M. Burns, JJ., affirmed in an opinion per curiam (Docket
No. 44868). The plaintiff appeals, claiming that her action
against Fidelity is founded in contract and thus is controlled by
a six-year period of limitation.

In a unanimous opinion by Justice Williams, the Supreme
Court *held:*

The Legislature, in enacting the dramshop act, intended that
the act should provide the exclusive remedy for persons injured
by a visibly intoxicated person as the result of an unlawful sale
of an intoxicating beverage to such person, including actions
against a bar owner's surety. Thus an action brought under the
dramshop act against a surety is governed by the act's two-year
period of limitation and not by the six-year period for actions
in contract.

1. The dramshop act is part of the Michigan Liquor Control

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 45 Am Jur 2d, Intoxicating Liquors §§ 561, 567, 578.
What constitutes "injury in person or property" within civil dam-
age or dram shop act. 6 ALR2d 798.
[2] 45 Am Jur 2d, Intoxicating Liquors §§ 579, 589.

Act and was enacted to discourage bars from selling intoxicating beverages to minors or visibly intoxicated persons and to provide for recovery under certain circumstances for persons injured as a result of an illegal sale. The language of the statute, given its ordinary and accepted meaning, indicates that the remedy is exclusive. The act creates a right of action against bar owners and their sureties which was unavailable at common law and provides a specific action with which to achieve a remedy. The act specifically provides that such actions are subject to a two-year period of limitation.

2. The plaintiff's amended complaint did not state a cause of action in contract, but that theory was argued in the trial court and in a supplemental memorandum of law following the trial. The defendant never objected to the contract theory, and the trial court fully addressed the issue in its opinion. A remand to amend the complaint to conform to the contract theory would be a mere formality. Thus, under the court rule permitting amendment of a complaint to conform to the evidence, the pleadings are deemed amended.

3. The plaintiff's action against Fidelity on the theory that she was a third-party beneficiary of Fidelity's contract with Stein must fail. The exclusive remedy is provided under the dramshop act, and the two-year period of limitation controls. The plaintiff permitted the period to run and is barred from asserting an action in contract.

The decisions of the trial court and the Court of Appeals are affirmed.

98 Mich App 358; 296 NW2d 60 (1980) affirmed.

1. INTOXICATING LIQUORS — DRAMSHOP ACT — REMEDIES.

The dramshop act provides the exclusive remedy for a person injured by a visibly intoxicated person as a result of an unlawful sale of an intoxicating beverage to that person (MCL 436.22; MSA 18.933).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — LIMITATION OF ACTIONS — SURETIES.

An action against a bar owner's surety for injuries caused by an intoxicated person as a result of an illegal sale of an intoxicating beverage to that person is governed by the provisions of the dramshop act, including its two-year period of limitation; because the act provides the exclusive remedy for such injuries, the action may not be brought in contract and is not governed by the six-year period of limitation (MCL 436.22, 600.5807[8], 600.5813; MSA 18.933, 27A.5807[8], 27A.5813).

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman)* for plaintiff.

*Zemke & Hirschhorn, P.C.* (by *Peter J. Lyons),* for defendant.

WILLIAMS, J. This dramshop case raises one principal question: may an injured party sue the surety on a bar's liquor bond in contract and enjoy the six-year statute of limitations available to contract actions, or is the injured party limited to the dramshop act's[1] tort action and its two-year period of limitations? There is a subsidiary question whether the plaintiff, having brought the dramshop tort action within two years against the bar and the unknown bar employee and obtained judgment, may, after the expiration of the two years amend her complaint to add a count in contract against the bond's surety on the liquor bond.

To reach the question on the merits, we hold that plaintiff, even after judgment, can amend her complaint to include the surety as a defendant. However, on the merits, we hold that the Legislature in drafting the dramshop act intended to establish a self-contained provision to accomplish its particular objectives and that the tort remedy and two-year statute of limitations provided therein are exclusive. Consequently, a suit in contract enjoying a six-year statute of limitations is not available. We affirm the judgment of the trial court and the Court of Appeals.

## I. FACTS

In the early hours of November 12, 1973, plaintiff Willodean Browder, while a patron at the

[1] MCL 436.22; MSA 18.993.

Grapevine Lounge in Detroit, was shot in the left leg by an intoxicated employee. The assailant, known only as Shay, was never apprehended. Suit was timely filed on October 15, 1974, against lounge owner James Stein, doing business as the Grapevine Lounge, and the unknown assailant[2] under Michigan's "dramshop act".[3] MCL 436.22; MSA 18.993. An amended complaint was filed on March 15, 1976, adding defendant International Fidelity Insurance Company as surety of the Grapevine Lounge's class "C" $5,000 liquor bond. A default judgment was entered against defendant Stein and the Grapevine Lounge on April 19, 1977, but, due to defendant's insolvency, has remained unsatisfied.[4] Defendant Fidelity's motion for accelerated judgment was stayed pending a February 1977 bench trial. Wayne Circuit Judge Patrick Duggan, rejecting claims that the dramshop act permits a concurrent common-law action in contract, found plaintiff's action against Fidelity to be barred by the two-year statute of limitations. An order granting defendant accelerated judgment was entered on April 19, 1979. The Court of Appeals affirmed in a per curiam opinion, 98 Mich

---

[2] The unknown assailant was included in the suit in accordance with the name and retain provision of the dramshop act. MCL 436.22; MSA 18.993. Defendant originally argued that plaintiff had not exercised due diligence in attempting to ascertain the identity of the assailant. See *Salas v Clements*, 399 Mich 103, 110; 247 NW2d 889 (1976). The trial court found "that plaintiff did exercise due diligence". This issue was not appealed.

[3] The "dramshop act" is actually a subpart of the Liquor Control Act, MCL 436.1 *et seq.;* MSA 18.971 *et seq.*

"The term 'dramshop' is a colloquialism well known to the bench and bar of this state as having reference to provisions in state statutes imposing vicarious civil liability upon a designated class of persons for dispensing liquor under certain prohibited circumstances. In the instant case the term 'dramshop' is colloquially applied to the civil liability provisions of § 22 of the Michigan Liquor Control Act." *Guitar v Bieniek,* 402 Mich 152, 157, fn 4; 262 NW2d 9 (1978).

[4] Defendant Stein and the Grapevine Lounge were adjudicated bankrupt on December 30, 1975.

App 358; 296 NW2d 60 (1980), from which we granted leave. 411 Mich 972 (1981).

## II. PARTIES' ARGUMENTS

Plaintiff-appellant Browder admits that the action against defendant-appellee Fidelity was not brought prior to the expiration of the dramshop act's two-year period of limitations, but insists that her cause of action is founded in contract and thus is controlled by a six-year statute of limitations. See MCL 600.5807 and 600.5813; MSA 27A.5807 and 27A.5813. The plaintiff states:

"Plaintiff-appellant contends that the Court of Appeals misconstrued the intended nature of plaintiff-appellant's action against the surety. Plaintiff-appellant asserts that the allegations against defendant-appellee were based on the obligation of the surety to its principal, based on the bond. Plaintiff-appellant's action against defendant-appellee was, therefore, in the nature of a third-party beneficiary action in *contract.* Thus, the two-year statute of limitations does not apply." (Emphasis in original.)

While recognizing that the dramshop act is in derogation of the common law, plaintiff argues that since the act is remedial it should be liberally construed and thereby not be held to provide an exclusive remedy.

Defendant-appellee admits that it would be liable on the $5,000 liquor bond to plaintiff had the amended complaint been filed within two years of the injury, but insists that 1) the Court of Appeals was correct in finding that "the plaintiff's complaint against the defendant surety indicates that the plaintiff was basing liability upon a negligence theory as established under the dramshop act", 98 Mich App 361, and that therefore plaintiff's action

is barred by the statutory limitation period; 2) even were plaintiff's action well-pled, the cause of action provided in the dramshop act is exclusive; and 3) liability on the bond to the injured party is not derived from any contractual obligation, but is created by the statute.

### III. AMENDMENT OF THE COMPLAINT TO CONFORM TO THE EVIDENCE

We will first address the issue concerning the pleadings.

A two-count complaint was timely filed on October 15, 1974, against defendants Stein and the unknown assailant for negligence and assault and battery. On March 15, 1976, two years and four months after the shooting, plaintiff amended her complaint to include a third count adding defendant Fidelity.

The Court of Appeals held:

"This Court's review of the plaintiff's complaint against the defendant surety indicates that the plaintiff was basing liability upon a negligence theory as established under the dramshop act. Where the plaintiff has alleged liability based upon the dramshop act, the act's limitation period should govern." 98 Mich App 361.

We agree that the amended complaint does not allege a cause of action in contract.[5] However, the breach of contract theory was forcefully argued by plaintiff before the trial court and in a supplemen-

---

[5] Count III sets forth a cause in negligence, stating that Fidelity "did owe a duty to your plaintiff to see that no intoxicating beverages were [illegally] served upon the premises of defendant" (point 5); defendant breached this duty (point 6); this breach resulted in injuries (point 7); and damages flowed therefrom (points 8-11). Thus a cause of action in tort, rather than contract, was pled.

tal memorandum of law following the trial. Defendant never objected to the inclusion of this contract theory, and the trial judge fully addressed this issue in his opinion.

The Michigan General Court Rules permit a complaint to be amended to conform to the evidence. GCR 1963, 118.3, in part, states:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case an amendment of the pleadings to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment."

Plaintiff requests that should this Court find the amended complaint not to allege an action in contract then "in the interest of justice" this case ought to be remanded to the trial court to allow plaintiff to "more specifically plead an action in contract on the bond". 'A remand for amendment of the complaint would be a mere formality. Since this point has been fully briefed and argued before the lower courts and this Court on the contract theory and in the interest of judicial economy, we deem the pleadings to be amended under GCR 1963, 118.3.

## IV. IS THE DRAMSHOP REMEDY EXCLUSIVE?

The principal issue of this case, of course, is whether the dramshop act provides an exclusive cause of action and period of limitations. At the time of injury, the pertinent provisions of the dramshop act were:

"*Every* wife, husband, child, parent, guardian or other *persons who shall be injured* in person or prop-

erty, means of support or otherwise, *by a visibly intoxicated person by reason of the unlawful selling,* giving or furnishing *to any such persons any intoxicating liquor, and the sale is proven to be a proximate cause of the injury* or death, *shall have a right of action* in his or her name, *against the person who shall by such selling,* or giving of any such liquor *have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable,* severally and jointly, *with the person or persons selling,* giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid, *and in any action provided for in this section, the plaintiff shall have the right to recover actual damages* in such sum not less than $50.00 in each case which the court or jury may determine that intoxication was a proximate cause of the injury or death, *but no surety shall be liable in excess of the amount of the bond required by this act. Any action shall be instituted within 2 years* after the happening of the event and *all factual defenses open to the alleged intoxicated person or minor shall be open and available to the principal and surety.* In case of the death of either party, the action or right of action given in this section shall survive to or against his or her executor or administrator, and in every such action by a husband, wife, child or parent, the general reputation of the relation of husband and wife or parent and child shall be prima facie evidence of such relation, and the amount so recovered by either husband or wife or parent and child shall be his or her sole and separate property. *Such damages* together with the costs of suit *shall be recovered in an action of trespass on the case* before any court of competent jurisdiction; and in any case where the parents shall be entitled to any such damages, either the father or mother may sue alone therefor but recovery by one of such parties shall be a bar to suit brought by the other. *No action against a retailer* or wholesaler or anyone covered by this act *or his surety, shall be commenced unless the minor or the alleged intoxicated person is a named defendant in the action and is retained in the*

*action until the litigation is concluded by trial or settlement.* The bond required by this act shall continue from year to year unless sooner cancelled by the surety. No surety shall cancel any bond except upon 10 days' written notice to the commission." MCL 436.22; MSA 18.993. (Emphasis added.)[6]

The primary purpose of statutory construction is to ascertain and give effect to the intention of the Legislature. The rules of construction established by the courts over the years "serve but as guides to assist the courts in determining such intent with a greater degree of certainty". *Grand Rapids v Crocker,* 219 Mich 178, 182; 189 NW 221 (1922). Accord, *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 248; 191 NW2d 307 (1971). A basic rule of statutory construction is that where the Legislature uses certain and unambiguous language, the plain meaning of the statute must be followed. *Crocker, supra,* 182; *Dussia, supra,* 248. See 2A Sands, Sutherland Statutory Construction (4th ed), §§ 46.01 and 46.04, pp 48-49 and 54-55.

The dramshop act is part of the Michigan Liquor Control Act, MCL 436.1 *et seq.;* MSA 18.971 *et seq.,* whose overall object, as defined by the title to the act, is to provide "for the control of the alcoholic beverage traffic within the state of Michigan".

Upon examination of the dramshop act, it becomes clear that the particular objective of the Legislature in enacting it was to discourage bars from selling intoxicating beverages to minors or visibly intoxicated persons and to provide for recovery under certain circumstances by those in-

---

[6] The act was amended by 1980 PA 351. See MCL 436.22(5); MSA 18.993(5). The changes were not substantive in nature and would not affect the holding in this case.

jured as a result of the illegal sale of intoxicating liquor.

As the emphasized portions of the statute demonstrate, the Legislature used clear and unambiguous language. The Legislature obviously intended the cause of action and the period of limitations provided in the dramshop act to be the exclusive cause of action and exclusive period of limitations for the following combination of reasons:

(1) The Legislature said that the damages provided *"shall* be recovered in an action of trespass on the case". A necessary corollary to the plain meaning rule is that courts should give the ordinary and accepted meaning to the mandatory word "shall" and the permissive word "may" unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole. See *Smith v School Dist No 6, Fractional, Amber Twp,* 241 Mich 366, 369; 217 NW 15 (1928). Thus, the presumption is that "shall" is mandatory.[7] Neither the plain meaning of the statute as a whole or in any part indicates that "shall be recovered in an action of trespass on the case" is not mandatory. Indeed, as the discussion below indicates, the intention was quite the contrary.

(2) The Legislature has *created* a new and non-common-law remedy and has provided that a particular cause of action shall be used. The act reads: "Every * * * person * * * who shall be injured * * * by a visibly intoxicated person by reason of

---

[7] See 2A Sands, Sutherland Statutory Construction (4th ed), § 57.03, pp 415-416. Accord *Jersey City v State Board of Tax Appeals,* 133 NJL 202, 209; 43 A2d 799 (1945). Cf. *State Highway Comm v Vanderkloot,* 392 Mich 159, 180; 220 NW2d 416 (1974) (popular and common understanding of the word "shall" denotes mandatoriness; where supporting language is unequivocal, this Court has uniformly held that "shall" is mandatory).

the unlawfully selling * * * to any such persons
* * * *shall* have a right of action * * * against the
person who shall by such selling * * * have caused
or contributed to the intoxication of said person or
persons or who shall have caused or contributed to
such injury, and the principal and sureties to any
bond given under this law shall be liable * * *
with the person or persons selling * * * liquors
* * *, and * * * the plaintiff shall have the right
to recover actual *damages* * * * but no surety
shall be liable in excess of the amount of the bond
required by this act * * *. * * * *Such damages*
* * * shall be recovered in an action of trespass on
the case". First of all, it is clear that this is a new
remedy because it is not against the intoxicated
person who causes the ultimate injury but against
the bar owner who sold intoxicating liquor to a
minor or a visibly intoxicated person. There was
no such common-law remedy.[8] Likewise, it is a new
remedy to have a cause of action on the bond.
Second, the Legislature has specifically provided
that the new cause of action to recover actual
damages against the bar owner and to the amount
of the bond against the sureties shall be an action
in trespass on the case. In sum, the Legislature
fashioned a new remedy and provided a specific
action with which to achieve that remedy. In other

---

[8] 45 Am Jur 2d, Intoxicating Liquors, § 553, pp 852-853; 48 CJS,
Intoxicating Liquors, § 430, p 139; Anno: *Right of action at common
law for damage sustained by plaintiff in consequence of sale or gift of
intoxicating liquor or habit-forming drugs to another,* 75 ALR2d 833,
835. This was certainly true of Michigan common law. *Manuel v
Weitzman,* 386 Mich 157, 163; 191 NW2d 474 (1971); *Gray v Black-
man,* 30 Mich App 212, 213; 186 NW2d 76 (1971). See *Brockway v
Patterson,* 72 Mich 122, 125; 40 NW 192 (1888). Accord *Megge v
United States,* 344 F2d 31, 32 (CA 6, 1965). *Cf. Waynick v Chicago's
Last Dep't Store,* 269 F2d 322 (CA 7, 1959) (recovery allowed based on
the Michigan common-law rule that there is no right without a
remedy *and* an Illinois statute outlawing the sale of alcoholic bever-
ages to a visibly intoxicated person in order to prevent a vacuum in
the law).

words, the Legislature has designated a particular remedy for a new and particular right.

(3) The Legislature has here created a carefully crafted and self-contained measure to try to control, in a fair and reasonable manner, the flow of liquor traffic by establishing civil liability for injuries resulting from illegal liquor sales. The careful balancing of the new remedy and the new liability is indicated by the following factors. On the one hand, the injured party is protected by a new and non-common-law remedy against a person not otherwise liable, the bar owner. In addition, the bar owner has to be bonded, and both the bond principal and sureties are liable, the sureties to the extent of the bond. This reasonably assures the plaintiff of recovery against a financially responsible person or persons. On the other hand, the bar owner and those liable on the bond, who themselves did not commit, and may not have been aware of the commission of, the tort, are protected from stale claims which they might find particularly difficult to investigate.

Furthermore, the Legislature has carefully considered and reconsidered the dramshop act to keep it internally balanced. As we have seen, the first adjustment was to add a specific two-year period of limitations where none had existed before. Compare 1958 PA 152, § 22(2) *with* 1933 PA 8, § 22 [1948 CL 436.22(2); MSA 18.993(2)]. Then the Legislature enacted a provision requiring that the bond automatically continue from year to year unless the Liquor Control Commission is given ten days' written notice by the surety of its intent to cancel the bond. 1961 PA 224. In 1972, several changes were made. Originally, the act provided for exemplary damages, 1933 PA 8, § 22, but this apparently tilted the act too far in favor of the

claimant, so the Legislature modified the act to provide only for actual damages. The requirement of proximate causation was specifically added as was the provision giving the principal and surety all factual defenses which the intoxicated person or minor possessed. Finally the intricate balance was kept by requiring the plaintiff to name and maintain the intoxicated person who actually committed the injury as a defendant. 1972 PA 196, § 22(2). This, of course, is to avoid possible collusion between the plaintiff and the one who caused the injury. *Cf. Salas v Clements,* 399 Mich 103, 110; 247 NW2d 889 (1976). In short, the Legislature has carefully created a self-contained package which has its own built-in checks and balances, among which are included a specified cause of action and period of limitations.

(4) The Legislature provided a particular period of limitation in these words: "Any action shall be instituted within 2 years". The "shall" here is mandatory for the same reasons discussed for the cause of action in reasons (1) and (3). Therefore, under the plain and ordinary meaning of the statute, in order to recover for injuries incurred in a factual situation giving rise to the legislatively created and balanced remedy of the dramshop act, the lawsuit must be brought within two years. Accord, *Jones v Bourrie,* 369 Mich 473, 476; 120 NW2d 236 (1963) (dramshop two-year period of limitations takes precedence over three-year period of limitation for common-law negligence action).

In summary, we find that the Legislature intended the dramshop act to be a complete and self-contained solution to a social problem not adequately addressed at common law. The plain and unambiguous language, together with the built-in

checks and balances adopted by the Legislature to finely hone the rights and obligations of the parties under the act, lead to only one conclusion: the Legislature intended the statutory action of trespass on the case to be the exclusive remedy and "any action" arising under dramshop-related facts to be instituted within two years.[9]

## V. CONCLUSION

Therefore, plaintiff's action under a common-law third-party beneficiary theory must fail. As this Court unanimously held in *Jones, supra,* 476-477:

"Plaintiff herein, for unknown reasons, permitted the statutory period to run. He cannot now assert an action to exist at common law. Plaintiff's remedy is under the [dramshop] statute * * * and he failed to timely exercise it. To allow now an action, based on a common-law remedy, would be to permit circumvention of the statute and to assert a nonexistent remedy beyond that provided by the legislature."

The decision of the trial court dismissing plaintiff's cause of action and the judgment of the Court of Appeals are affirmed. No costs, a public question being involved.

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

---

[9] Plaintiff's argument that since the dramshop act is remedial in nature it should be liberally construed is not controlling. While the dramshop act is remedial in nature and should be liberally construed, *Podbielski v Argyle Bowl, Inc,* 392 Mich 380, 384-385; 220 NW2d 397 (1974); *LaBlue v Specker,* 358 Mich 558, 568; 100 NW2d 445 (1960); *Eddy v Courtright,* 91 Mich 264, 267; 51 NW 887 (1892), we cannot read into the statute that which is not there. "In the statute now before us, the language admits of but one construction. No doubt can arise as to its meaning. It must therefore be its own interpreter." *Bidwell v Whitaker,* 1 Mich 469, 479 (1850).